[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-12295
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 15, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 07-00013-CV-3-RV-MD

HARRY POLLINGER,

Plaintiff-Appellant,

versus

INTERNAL REVENUE SERVICE
OVERSIGHT BOARD, et al.,

Defendants,

UNITED STATES,
a Federal Corporation,
a.k.a. United States of America,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 15, 2010)

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Harry Pollinger ("Pollinger") appeals, pro se, the district court's grant of summary judgment on his claims that the government intentionally, recklessly, or negligently disregarded the law in connection with the collection of his federal income tax for tax years 2000 to 2002. The government moves us to sanction Pollinger for maintaining a frivolous appeal. After reviewing the record, we vacate in part for Pollinger's constitutional claims to be dismissed for lack of jurisdiction, affirm the district court's grant of summary judgment on the statutory claims, and deny the government's motion for sanctions.

## I. BACKGROUND

A. Pollinger's Complaint

In January 2007, Pollinger filed a complaint against the United States, the Internal Revenue Service ("IRS") and others challenging the amount of tax liability assessed against him and the collection methods used, including garnishing his wages, seizing his bank accounts, and filing tax liens on his real estate. R1-1 at 1-2, 5-10. Liberally construed, Pollinger explained that he exchanged his life and liberty for wages, so government seizure of his wages was an illegal seizure of life and liberty. See id. at 15. He claimed the IRS had issued a notice of federal tax

lien for tax years 2000-2002 and that he had exhausted all administrative remedies in that regard. Id. at 6, 9. The relief Pollinger sought included a finding that his property was improperly taken, an order that the tax liens be released, the return of all the property and money seized, statutory damages of $2 million, and costs/interest. Id. at 22-23.

Pollinger raised six claims: (1) the need to quiet title on his real estate, which the government was claiming an interest in, pursuant to 28 U.S.C. § 2410; (2) the government's failure to comply with 26 U.S.C. § 6213(a) by issuing procedurally invalid notices of deficiency, notices of levy, and notices of tax liens in violation of various constitutional provisions; (3) a violation of the Administrative Procedures Act ("APA") and the Due Process and Just Compensation Clauses of the Fifth Amendment by the IRS improperly asserting tax liability and taking his property; (4) the government's failure to comply with 26 U.S.C. § 7432 by issuing a procedurally improper tax levy and refusing to release the notice of lien, pursuant to 26 U.S.C. § 6325; (5) issuance of a bill of attainder by labeling him an illegal tax protester and taking his property without a trial and via procedurally invalid notices of levy and tax liens in violation of various constitutional provisions; and (6) illegal seizure of his labor in violation of the Just

3

Compensation Clause of the Fifth Amendment and other constitutional provisions.[1]

Id. at 10-21.

B. Pollinger's Motion for Summary Judgment

In April 2008, Pollinger filed a motion for summary judgment on all claims. R1-47. He asserted that the government had taken his sweat equity and labor property from him by garnishing his wages, seizing his savings from his bank, and encumbering his real property. Id. ¶¶ 1-4, 6-7. Pollinger asserted for the first time that he exhausted his administrative remedies pursuant to 26 U.S.C. § 7433 and was filing a claim under § 7433 to recover damages from the IRS for its arbitrary seizures. Id. ¶¶ 8, 53-56. He argued that he was entitled to judgment because the government (1) did not establish a basis for tax liability on his compensation, and (2) improperly relied on the presumption of correctness of "Form 4340 – Certificate of Assessments" to show the amount of the tax assessment that applied to him and how that calculation was reached when the preparer of the form had no personal knowledge of the accuracy of the calculations the form contained. Id. ¶¶ 10-15, 23-31. Moreover, he contended that the tax lien against his property should

---

[1]On motion by the government, the district court dismissed defendants other than the United States, held that Pollinger did not state a claim under the APA, and denied declaratory and injunctive relief. R1-10, 22. Pollinger does not assert error regarding those issues on appeal. Accordingly, the issues are waived on appeal. Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

be released because the notices of deficiency: (1) ambiguously cited "Individual Income" as a basis for liability, (2) did not articulate a relevant statutory basis for tax liability, (3) cited an irrelevant code section, 26 U.S.C. § 1040, as the statute under which he was liable for the taxes, and (4) did not provide a factual basis for his tax liability. Id. ¶¶ 16-22.

Pollinger argued that he was entitled to a basis or depreciation for the value of his labor and, because the government did not prove he was not entitled to a basis, his compensation was not shown to be income. Id. ¶¶ 33-44. Further, Pollinger argued that the government documents purporting to support his tax liability and penalties were not in compliance with the Paperwork Reduction Act, and thus the assessments were invalid. Id. ¶¶ 45-52. In support of his motion, Pollinger filed, inter alia, notices of deficiency for 2000 and 2001. Doc. 48, Exh. H.

Pollinger also filed a motion for "Fair and Impartial Rulings, Hearings [and] Trials not Steeped in Judicial Activism." R1-49 at 1. He asserted that courts often rubber stamp acts of the IRS because judges are federal employees. Id. at 1-2, 11-15. Pollinger explained his perceptions of bias and that he was filing the motion to preserve his common law rights. Id. at 2-6. He requested strict adherence to precedent rather than judicial activism or bias. Id. at 7-11, 15-19.

C. Government's Motion for Summary Judgment

The government also filed a motion for summary judgment, asserting that Pollinger was clearly seeking relief pursuant to 26 U.S.C. § 7432 allowing civil damages for the government's failure to release a tax lien, not 26 U.S.C. § 7433, allowing damages for unauthorized collection actions. R1-51 at 4. The government explained that the IRS had followed proper procedures while assessing Pollinger's tax liability. Id. at 7-11. Regarding Pollinger's claim for quiet title, the district court lacked jurisdiction because the United States waived sovereign immunity only for procedural challenges to a tax lien, not the underlying merits of the tax assessment, but Pollinger was contesting the validity of the tax assessment underlying the lien on his property. Id. at 11-13. Pollinger's just compensation claim was without merit because the constitutionally authorized income tax did not violate the Constitution. Id. at 13. Moreover, due process was satisfied by the availability of judicial remedies. Id. at 13-14. Pollinger's argument that a bill of attainder was issued against him by the government's labeling him an "illegal tax protester" was misplaced because IRS records did not label him as such. Id. at 15. Additionally, any direct claim for money damages based on constitutional violations was also barred by sovereign immunity. Id. at 15-16.

Next, the government asserted that to the extent Pollinger had raised a claim under 26 U.S.C. § 7433, the claim failed because he was improperly attempting to challenge the assessment of tax, and he had not shown any unlawful collection activity under § 7433. Id. at 16-19. Further, Pollinger had not exhausted his administrative remedies under § 7433, and, in any event, all assessments were proper and in accordance with IRS procedure. Id. at 19-20. Pollinger also had not exhausted administrative remedies regarding a claim under 26 U.S.C. § 7432 or for a refund under 26 U.S.C. § 7422. Id. at 20-23. Substantively, Pollinger's claim under § 7432 for improper failure to release a lien was without merit because Pollinger did not satisfy 26 U.S.C. § 6325 as he neither satisfied the liability nor posted a bond. Id. at 21-22.

Attached to the motion was a certified copy of the IRS's records of Pollinger's tax liabilities. R1-51, Exh. B at 1-31. Also attached was an affidavit from Catherine Sands, a registered pseudonym for an IRS revenue agent. R1-51, Sands Affidavit. According to Sands, the IRS determined Pollinger's tax liabilities for 2000 through 2002, created substitute returns for each year, and initiated collection actions for the tax liability. Id. ¶ 5. After the IRS issued a Notice of Federal Tax Lien and Notices of Intent to Levy for the liability arising out of 2000 and 2001, Pollinger requested a collection due process hearing. Id. ¶¶ 5-6. After

7

the hearings, Pollinger received written decisions sustaining the decision to pursue collection. Id. ¶¶ 6, 9-10. IRS records indicated that a statutory notice of deficiency for 2002 was missing, but the individual masterfile showed that the notice was mailed to Pollinger's known address in September 2004, and that Pollinger did not timely petition the Tax Court thus defaulting on the notice. Id. ¶ 7. Sands stated that she had personal knowledge of the IRS record-keeping system, the system was kept in the regular course of IRS business, and the records did not show that Pollinger was designated as an "illegal tax protester." Id. ¶¶ 11-12.

D. Government's Response to Pollinger's Motion

The government responded to Pollinger's motion for summary judgment, arguing that Pollinger had not shown any waiver of sovereign immunity. R1-55 at 1. The only conceivable basis for recovery was 26 U.S.C. § 7433, which authorized actions for civil damages against the United States if an IRS employee acts unlawfully in the collection of federal tax. Id. at 4. However, Pollinger did not show any government act that fell within the purview of that statute or that he had exhausted his administrative remedies with regard to such a claim. Id. at 4-5. In particular, none of his exhibits showed that he made a proper administrative claim or that a claim was denied as required for a suit under § 7433. Id. at 5.

8

Even assuming that Pollinger exhausted administrative remedies sufficient to bring a § 7433 action, the government argued that Pollinger could only challenge the collection procedures, not the assessment of tax liability. Id. at 6. Further, Pollinger's assertion that officials certifying the IRS records lacked personal knowledge was without merit because the certifying official was not required to have personal knowledge of how Pollinger's taxes were assessed as the records were self-authenticating. Id. at 6-7. Pollinger presented nothing that overcame the presumption of correctness of Form 4340, which set forth his tax assessments. Id. at 7. Finally, Pollinger's argument that his wages were not taxable because individuals have a basis in their labor equal to the fair market value of the wages they receive and thus have no gain to be taxed, conflicted with the IRS's definition of gross income as income from any source. Id. at 7-8.

E. Pollinger's Response to the Government's Motion

Pollinger responded to the government's motion for summary judgment, arguing that he could raise a due process challenge because the IRS had not explained how it determined the amount of his tax liability. R2-62 at 3-5. The lack of explanation, combined with the IRS's notices of deficiency, notices of tax liens, and Forms 4340, created an illusion of compliance with proper procedures and created a genuine issue of material fact regarding whether the IRS accurately

9

computed his tax liability. Id. at 5-6. Additionally, the copies of Form 4340 were not supported by documentary evidence and were hearsay. Id. at 6-10.

Pollinger also argued that the IRS did not properly notify him of the requirement to file a tax return, and he was not required to file a tax return without that notice. Id. at 10-13. Further, he did not earn taxable income because his wages were not entirely profit. Id. at 13-14, 16-19. Pollinger argued that the government's assertion that his entire wages were taxable income was based on erroneous and undisclosed calculations. Id. at 14-15. Pollinger maintained that his arguments were not frivolous, id. at 19-20, and asserted that the IRS engaged in unlawful collection activity under § 7433 by (1) improperly relying on a misinterpretation of 26 U.S.C. § 6331, which governed the IRS's taking of property via notices of levy, and (2) imposing greater tax liability than allowed by law. Id. at 20-24.

F. Magistrate Judge's Report

The magistrate Judge issued a report and recommendation finding that Pollinger's motion for summary judgment should be denied and the government's motion should be granted. R2-67 at 1. Regarding Pollinger's due process claims, the notices of determination from tax years 2000 and 2001 that Pollinger attached to his summary judgment motion belied any claim that the notices did not issue

10

and that he did not receive due process regarding his tax liability from 2000 and 2001.  Id. at 6-8.  As for tax year 2002, the magistrate judge noted that while the government could not locate a copy of the notice of deficiency, it had provided exhibits showing that it issued its statutorily required notice and demand for payment.  Upon receiving that notice, Pollinger requested a hearing after which the liens were sustained.  Id. at 9.

Regarding Pollinger's quiet title claim, the magistrate judge found jurisdiction because Pollinger was asserting a procedural challenge to the government's alleged failure to issue a notice of deficiency, which resulted in an allegedly invalid notice of tax lien.  Id. at 12.  Nevertheless, Pollinger had not rebutted the evidence of the procedural steps taken by the IRS, therefore, the government was entitled to judgment as a matter of law on that claim because there were no genuine issues of material fact.  Id.

The magistrate judge also found that Pollinger's constitutional claims failed.  Id. at 12-13.  Regarding Pollinger's just compensation and due process claims, judicial review was unavailable in that Pollinger could have filed a refund suit under § 7422 or petitioned the tax court under 26 U.S.C. § 6213 to redetermine the asserted tax deficiency, but Pollinger did not use either of those procedures.  Id.  Regarding the bill of attainder claim, the court found that there was no genuine

11

issue of material fact because no evidence showed that IRS records designated Pollinger an "illegal tax protester." Id. at 13.

As for any claim under 26 U.S.C. § 7433 that Pollinger's complaint could be construed to raise, the court found that there was no evidence the IRS had improperly assessed Pollinger's tax liability or used improper collection procedures. Id. at 14. Further, Pollinger could not use 26 U.S.C. § 7433 to challenge the existence of tax liability. Id. Regarding Pollinger's claim that IRS employees improperly failed to release a lien under 26 U.S.C. § 7432, the court found that Pollinger had not complied with the statutory prerequisites to bringing such an action by showing either that the liability was satisfied or that he posted a bond as required by 26 U.S.C. § 6325(a). Id. at 15-16. To the extent that Pollinger's complaint could be construed as a suit for a refund under 26 U.S.C. § 7422, the court lacked jurisdiction because Pollinger had not exhausted the jurisdictional prerequisites to suit with regard to any year but perhaps tax year 2001. Id. at 16-17. For 2001, however, the record showed that Pollinger did not file a return or pay taxes, justifying imposition of penalties. Id. at 17.

Turning to Pollinger's motion for summary judgment, the court found that Pollinger's assertions were "factually and legally unsound." Id. at 19. Specifically, Pollinger's argument that his wages were not taxable income was

12

frivolous. Id. at 19-20. Further, his allegation of noncompliance with the Paperwork Reduction Act did not entitle him to summary judgment and his argument to the contrary was frivolous. Id. at 20-21. Additionally, Pollinger's assertion that the preparer of Form 4340 did not have personal knowledge was frivolous and insufficient to rebut the form's presumption of correctness. Id. at 21.

The magistrate judge denied Pollinger's motion for an impartial trial to the extent that Pollinger sought "special consideration," explaining that there was "no basis for plaintiff's suggestion that his case will be treated other than in accordance with the law." Doc. 53 at 1.

Neither party filed objections, and the district court adopted the magistrate judge's report and recommendation, denied Pollinger's motion for summary judgment, and granted the government's motion for summary judgment. R2-70. Pollinger filed a timely notice of appeal. R2-72.

## II. DISCUSSION

On appeal, Pollinger argues that the district court denied him an impartial hearing as part of the court's prejudice in favor of the government, as shown by the denial of his motion for an impartial trial. He maintains that the IRS never disclosed its method for calculating his taxable income and, therefore, the tax liens are procedurally invalid. Pollinger asserts that the IRS also never identified the

13

statutory authority it relied upon to calculate his taxable income and liability. Pollinger maintains that the government did not establish that he was ever sent a notice of deficiency for tax year 2002. Pollinger expressly denies that he was seeking a refund under § 7422.

Construed liberally, Pollinger also argues that the district court erred by treating his wages as taxable gain without considering whether loss of his human capital was an expense. Pollinger asserts that he owns his labor as human capital and his wages were the fair market value of that labor, so he did not receive any taxable gain. He maintains that he was allowed to deduct for the depreciation of his human capital, and the denial of this deduction caused income tax to be imposed on parts of his wage that were not taxable gain. He asserts that the alternative interpretation, that he was not entitled to a deduction, implies the incorrect conclusion that his wages were a gift. Pollinger argues that the government is incorrect when it states the law classifies wages as income, and that position violates the prohibition against involuntary servitude. Pollinger asserts that the government did not verify the submitted copies of Form 4340 – the Certificate of Assessments of the tax – by producing the copies of the supporting Form 23C. He maintains the district court erred by treating his claims for damages

as a refund claim and refusing to address whether the government complied with the Paperwork Reduction Act.

The government responds, in part, by asserting that the district court lacked jurisdiction over Pollinger's constitutional claims because the United States has not waived sovereign immunity. Additionally, the government argues that the district court lacked jurisdiction over some of Pollinger's statutory claims because he did not exhaust his administrative remedies. Finally, the government motions to sanction Pollinger for maintaining a frivolous appeal.

A. Jurisdictional Issues

"The subject matter jurisdiction of the district court is a question of law subject to de novo review." Mut. Assurance, Inc. v. United States, 56 F.3d 1353, 1355 (11th Cir. 1995). The United States, as sovereign, is immune from suit except in cases where it consents to be sued, and the terms of the government's consent define the federal court's jurisdiction to entertain the suit. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1352 (1980). When no such consent exists, the district court lacks jurisdiction to entertain the suit. Id. Where a district court lacks jurisdiction to enter an order, the appellate court only has jurisdiction on appeal for the purpose of correcting the error of the lower court in entertaining the suit, and does not have jurisdiction over the merits. Tamiami Partners, Ltd. ex

15

rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla., 177 F.3d 1212, 1221 (11th Cir. 1999). A district court errs by entering summary judgment in favor of the government when the district court lacks subject matter jurisdiction, even when the underlying claim is without merit. Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1156-57 (5th Cir. Unit B 1981) abrogated on other grounds by United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054 (1987). The proper course is for the district court to dismiss claims over which it has no jurisdiction rather than deny summary judgment. Id. at 1157.

The district court lacks jurisdiction over constitutional claims brought directly against the United States for damages because those claims are barred by sovereign immunity. Boda v. United States, 698 F.2d 1174, 1176 (11th Cir. 1983). However, the United States has waived sovereign immunity for claims that IRS employees (1) knowingly or negligently failed to release a lien under 26 U.S.C. § 6325 or (2) intentionally, recklessly, or negligently disregarded the law in connection with any collection of federal tax. 26 U.S.C. §§ 7432, 7433. To fall within a waiver of sovereign immunity to raise a claim under either of those subsections, however, a taxpayer must exhaust administrative remedies. Id. §§ 7422, 7432(d)(1), 7433(d)(1).

16

The district court lacked jurisdiction over Pollinger's constitutional claims to the extent he sought money damages because the United States has not waived sovereign immunity over constitutional claims arising out of the collection of tax. Boda, 698 F.2d at 1176; McMahon v. Presidential Airways, Inc., 502 F.3d 1331, 1345 (11th Cir. 2007). Based on the lack of subject matter jurisdiction, the district court erred by granting summary judgment for the government as to the constitutional claims Pollinger raised seeking money damages under the due process, takings, just compensation, and bill of attainder clauses. Id. We therefore vacate the judgment in part and remand for the district court to dismiss Pollinger's constitutional claims. Stanley, 639 F.2d at 1156-57.

B. Summary Judgment Issues

We review "the district court's grant of a motion for summary judgment de novo, construing all evidence in the light most favorable to the non-moving party." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). "[C]onclusory allegations without specific supporting facts have no probative

17

value" and a party opposing summary judgment must set "forth specific facts to show why there is an issue for trial." Leigh, 212 F.3d at 1217 (citation and quotation omitted).

Submission of Form 4340 creates a presumption that the assessment of tax was proper. United States v. White, 466 F.3d 1241, 1248-49 (11th Cir. 2006). Sections 7432 and 7433 do not allow a taxpayer to challenge the propriety of assessing tax liability. 26 U.S.C. §§ 7432, 7433. We have held the argument that "wages are not income subject to tax but are a tax on property such as . . . labor" is frivolous. Motes v. United States, 785 F.2d 928, 928 (11th Cir. 1986) (per curiam).

The government's claim that the district court lacked jurisdiction over Pollinger's § 7433 claim because he failed to exhaust it is without merit. The evidence submitted by the government shows that Pollinger sought administrative relief from the IRS. Viewed in the light most favorable to Pollinger as the non-moving party, this evidence shows that the district court had jurisdiction over Pollinger's § 7433 claim because he exhausted – at least some – administrative remedies, allowing him to fall within the United States' waiver of sovereign immunity as to the statutory claims he raised under § 7433. 26 U.S.C. §§ 7422, 7433.

The district court correctly granted summary judgment, however, on the merits of Pollinger's statutory claims. Regarding Pollinger's § 7432 claim, the district court was correct that such a claim failed unless Pollinger raised a genuine issue regarding his satisfaction of the tax liability or his presentation of a bond. 26 U.S.C. §§ 6325, 7432. Because Pollinger presented no evidence to support either assertion, he failed to raise a genuine issue of material fact.

Likewise, under § 7433, Pollinger presented no evidence that the IRS negligently attempted to collect tax from him because he did not present any evidence that the IRS failed to follow proper procedures. Pollinger's claim that the government did not meet its burden in its motion for summary judgment in terms of following proper procedure is without merit. The government presented evidence that it complied with all procedures while collecting tax from Pollinger, including sending a notice of deficiency for each year. In particular, and contrary to Pollinger's new argument on appeal, the government's evidence specifically showed that the 2002 statutory notice of deficiency was mailed to Pollinger. Thus, Pollinger's argument that the IRS documentation merely created an illusion of procedural compliance is a conclusory allegation and insufficient to show that the IRS violated the procedures set forth in §§ 7432 and 7433.

19

Pollinger's claim that the IRS failed to justify the method it used to determine that he owed tax liability is without merit. Essentially, Pollinger is arguing that he is not legally obligated to pay taxes on his wages because his basis in his human capital offsets his wage revenue. This argument fails, however, because § 7432 and § 7433 do not allow for actions regarding assessment of tax liability. 26 U.S.C. §§ 7432, 7433. Moreover, his argument is legally frivolous. Motes, 785 F.2d at 928. Pollinger's argument that the government was required to produce a Form 23C to support a Form 4340 is equally without merit because Form 4340 has a presumption of correctness. White, 466 F.3d 1241, 1248-49. Moreover, Pollinger asserted only conclusory allegations insufficient to rebut the presumption of correctness. Leigh, 212 F.3d at 1214. The district court thus did not err by granting summary judgment to the government on Pollinger's statutory claims because Pollinger did not raise any genuine issues of material fact. Celotex Corp., 477 U.S. at 322, 106 S.Ct. at 2552.

Finally, Pollinger's claims of judicial bias have no support in the record, and his claim that summary judgment should not have been granted because the government did not comply with the Paperwork Reduction Act is also without merit. See United States v. Neff, 954 F.2d 698, 700 (11th Cir. 1992) (per curiam) (holding that the Paperwork Reduction Act has no effect on the duty to pay income

20

tax).  Because none of Pollinger's arguments on appeal have merit, we affirm the

district court's grant of summary judgment on Pollinger's statutory claims.

C. Sanctions

When affirming a judgment, a court of appeals may adjudge in its discretion

"just damages [to the prevailing party] for his delay, and single or double costs."

28 U.S.C. § 1912.  Damages are appropriate where the appeal was brought

frivolously or in bad faith.  Gathercrest, Ltd. State Bank of India v. First American

Bank & Trust, 805 F.2d 995, 997 (11th Cir. 1986).  In addition, Fed. R. App. P. 38

provides that if a court of appeals determines that an appeal is frivolous, it may,

after a separately filed motion or notice from the court and reasonable opportunity

to respond, award just damages and single or double costs to the appellee.

Fed. R. App. P. 38.  We have imposed Fed. R. App. P. 38 sanctions "against

appellants who raise 'clearly frivolous claims' in the face of established law and

clear facts."  Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette

ACLI Futures, Inc., 853 F.2d 834, 841 (11th Cir. 1988) (citation omitted).

Generally, sanctions under Fed. R. App. P. 38 and § 1912 are inappropriate

against a pro se appellant even if the appeal is frivolous.  Woods v. IRS, 3 F.3d

403, 404 (11th Cir. 1993) (per curiam).  Nevertheless, we have imposed sanctions

on pro se litigants who were warned by the district judge that their claims relating

21

to various tax issues were meritless. United States v. Morse, 532 F.3d 1130, 1132-33 (11th Cir. 2008) (per curiam); King v. United States, 789 F.2d 883, 884 (11th Cir. 1986) (per curiam).

While Pollinger's claims are frivolous in nature, after reviewing the record in full, and considering that Pollinger is a pro se appellant, we deny the government's motion for sanctions.

## III. CONCLUSION

Pollinger appeals the district court's grant of summary judgment on his claims that the government disregarded the law in connection with the collection of his federal tax. The government moves us to sanction Pollinger for maintaining a frivolous appeal. As we have explained, we **VACATE** the judgment in part and **REMAND** to the district court to dismiss Pollinger's constitutional claims, **AFFIRM** the district court's judgment on Pollinger's statutory claims, and **DENY** the government's motion for sanctions.

CARNES, concurring in part and dissenting in part:

I concur in all of the Court's decision, except the denial of sanctions. Notwithstanding the fact that the appellant is proceeding pro se, I would impose sanctions because his arguments are all utterly frivolous, the district court's decision put him on notice of that fact, and he still appealed. United States v. Morse, 532 F.3d 1130, 1133 (11th Cir. 2008); Webb v. Commissioner of Internal Revenue, 872 F.2d 380, 382 (11th Cir. 1989); Stoecklin v. Commissioner of Internal Revenue, 865 F.2d 1221, 1226 (11th Cir. 1989).