Justin **SCHLABACH**, Plaintiff,

v.

**UNITED STATES**, Defendant.

No. 10–676T.

United States Court of Federal Claims.

Dec. 19, 2011.

Justin Schlabach, pro se, Mead, Washington.

Paul G. Galindo, Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were John A. DiCicco, Principal Deputy Assistant Attorney General, Tax Division, and Steven I. Frahm, Chief, Court of Federal Claims Section. With him on the briefs and at trial was G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this tax-refund case, plaintiff Justin Schlabach seeks recovery of more than $10,000 in penalties and interest paid pursuant to 26 U.S.C. ("I.R.C.") § 6702 for filing an allegedly frivolous tax return and an allegedly frivolous tax submission. A trial was held on July 25 and 26, 2011, in Spokane, Washington. Post-trial briefing followed thereafter, and the case is now ready for resolution.

## FACTS[1]

On February 7, 2008, at the age of eighteen, Mr. Schlabach filed a Form 1040EZ tax return for the 2007 tax year. Tr. 30:13–16; PX 1; see also Tr. 409:3–19.[2] The tax return, however, was not completed in an ordinary manner. Although Mr. Schlabach earned $16,125 in wages from two employers, PX 1, at 2–3; PX 6, at 2, 6,[3] he reported $0 in adjusted gross income and claimed a $1,313.54 refund, PX 1, at 1. Mr. Schlabach did not attach to his return the Forms W–2 sent to him by his employers. Tr. 35:10–15; PX 1. Instead, he attached two Forms 4852, which are forms to be used as a substitute when an employer fails to send or sends an incorrect W–2. PX 1, at 2–3. To explain his

1. This recitation of facts constitutes the court's principal findings of fact in accord with RCFC 52(a). Other findings of fact and rulings on mixed questions of fact and law are set out in the analysis.

2. The trial transcript is cited as "Tr. —:—." Plaintiff's exhibits are cited as "PX —," and defendant's exhibits are cited as "DX —."

3. Unless otherwise specified, the pages of each exhibit are numbered separately, with the first actual page of each exhibit (as opposed to a title page or tab page) numbered as page 1.

reporting of $0 gross income, Mr. Schlabach wrote on the two Forms 4852, "I did not receive an[ ] income as an employee as specifically defined at IRC section 3401 and 3121 and others." *Id.* at 2; *see also id.* at 3. At trial, Mr. Schlabach stated that this manner of filing "was how I understood you reported your taxes." Tr. 35:25 to 36:1. This understanding was influenced by the plaintiff's father, *see* Tr. 115:12 to 118:20, who in turn appears to have been influenced by the work of a tax protest promoter, *see* Tr. 229:14 to 230:15, 412:7–25. Mr. Schlabach at the time was (and still is) a student working his way through college.

Mr. Schlabach's return was forwarded to the Internal Revenue Service's ("IRS") action center for frivolous returns, located in Ogden, Utah. *See* Tr. 175:15–25, 228:15–21, 234:23–25; DX 14, at 3 row 17.[4] The Ogden office opened a control on Mr. Schlabach's file in the IRS Information Data Retrieval System ("IDRS"), which control served as a signal to the rest of the IRS that the Ogden office was handling a frivolous-return matter related to Mr. Schlabach and that correspondence or other submissions from Mr. Schlabach should be forwarded to the Ogden office. *See* Tr. 448:2–15, 519:8–14. By letter dated June 25, 2008, the Ogden office responded to Mr. Schlabach regarding his tax return for 2007, cautioning him that the return contained "positions identified as frivolous under [I.R.C. § ] 6702(c)" and providing 30 days for him to correct the return; otherwise, the letter warned, the IRS could assess a $5,000 fine. Tr. 41:1–4; PX 2. Mr. Schlabach replied, requesting the IRS to explain how his position was frivolous and maintaining the correctness of his tax return. Tr. 42:23–25; PX 3. On November 5, 2008, the Ogden office sent a second warning letter. Tr. 44:15–17; PX 4. Then, on December 1, 2008, presumably on Ogden's instruction, Tr.

500:15–18, the IRS office in Fresno, California sent Mr. Schlabach a notice imposing a $5,000 penalty for submitting a frivolous tax return. Tr. 48:7–8; PX 5.

Mr. Schlabach responded to the imposition by sending two sets of documents to the Fresno office. First, on December 1, 2008, under a letter of transmittal, he mailed a corrected, valid Form 1040A for the 2007 tax year. Tr. 36:11–14, 420:7–13; PX 6. Second, on December 4, 2008, he mailed a letter contesting the $5,000 penalty. Tr. 50:15–17; PX 7. Both sets of documents were forwarded to the Ogden office, where Mr. Schlabach's transmittal and valid return were erroneously classified as frivolous correspondence and destroyed. *See* Tr. 192:9–13, 241:3–14; PX 12; DX 14, at 3 rows 1–2. This conclusion is inferred from several facts.[5] First, the control on Mr. Schlabach's file in the IDRS would have instructed the Fresno office to forward Mr. Schlabach's correspondence and returns to Ogden. *See* Tr. 446:14–23. Second, Mr. Schlabach sent these two items in early December 2008, and the Ogden office's master database file for Mr. Schlabach records two items, and two items only, as having been received (and then destroyed) in December 2008: one on December 11, the other on December 12. DX 14, at 3 rows 1–2; *see* Tr. 240:13 to 241:14. Third, no receipt of a valid return was contemporaneously recorded in Mr. Schlabach's IRS master file. Tr. 428:22 to 429:10; *see also* DX 9. Fourth, a letter dated February 18, 2009 to Mr. Schlabach from the Fresno office stated that the office could not find a Form 1040 sent by Mr. Schlabach for the 2007 tax year. Tr. 63: 1–3; PX 12. While the letter from the Fresno office says that the missing 1040 was dated December 24, 2008, PX 12, the court finds that the 1040 referred to is Mr. Schlabach's corrected return sent on December 1, 2008, and

---

4. DX 14 is a printout of a portion of the Frivolous Return Program master database record for Mr. Schlabach, which record notes correspondence received and action taken by the IRS Ogden office related to him. Tr. 209:16–23, 210:25 to 211:3. DX 14 consists of a certification page (page 1), and a spreadsheet (pages 2 and 3). For citation purposes, the court has numbered, from the top down, each row of each page of the spreadsheet. For example, the fifth row on the

first page of the spreadsheet would be cited as "DX 14, at 2 row 5," while the eleventh row on the second page of the spreadsheet would be cited as "DX 14, at 3 row 11."

5. The employee most likely to have direct knowledge of the documents' destruction did not testify and was identified at trial only as "4ZGFB." *See* Tr. 243:5–6, 438:19–22; DX 14, at 3 rows 1–2.

that the listed date of December 24, 2011 may either be when the return was handled by an IRS office or reflect an error. *See* Tr. 506:12–14 (Test. of Tara Durrant, Program Management Analyst for the IRS Frivolous Return Program) ("I know mistakes are made and normally are finger errors such as receive date, IRS receive dates. That's the common thing I see in errors."); Tr. 507:4–6 (same).[6] Finally, Ms. Durrant's testimony respecting whether the Ogden office had misidentified and destroyed the valid 1040 was based upon what should have happened and was not credible in the specific circumstances. *See* Tr. 417:12 to 420:23, 505:25 to 507:6.

On February 23, 2009, in response to the Fresno office's letter about the missing Form 1040, Mr. Schlabach again mailed his corrected return. Tr. 63:19–24; *see* PX 13. This time, it was received in due course, Tr. 65:22–23; PX 15; PX 16, and Mr. Schlabach's tax refund for 2007 was later applied to reduce one of his penalties, Tr. 94:8–12; PX 26.

Meanwhile, Mr. Schlabach addressed the frivolous-return penalty imposed against him regarding the original return. Based upon the dates of the relevant documents, that penalty imposition had probably crossed in the mail with Mr. Schlabach's submission of a proper return for 2007. During January and February 2009, the IRS sent a bill for the penalty and a warning that they would levy on Mr. Schlabach's assets if he did not pay, to each of which Mr. Schlabach responded with letters containing various requests and arguments. Tr. 53:16 to 57:18; PX 8 to PX 11. Thereafter, on May 5, 2009, Mr. Schlabach submitted a Form 12153 Request for a Collection Due Process or Equivalent Hearing ("CDP hearing request") to contest the penalty. Tr. 59:13–17; DX 5. The Fresno office of the IRS acknowledged receipt of the CDP hearing request on May 20, 2009, Tr. 65:3–5; PX 14, and the appeals office in Fresno sent advice of its procedures on June 25, 2009, Tr. 66:16–18; PX 17. Shortly thereafter, on July 1, 2009, the Fresno office informed Mr. Schlabach that his appeals request was based on a frivolous position and that he needed to either withdraw his appeal entirely or "[a]mend [his] hearing request in writing, to state a legitimate issue and state in writing that [he] withdraw[s] the frivolous . . . issue(s)." PX 18, at 2 (emphasis omitted); *see* Tr. 67:2–3, 10–15. On July 16, 2009, Mr. Schlabach submitted an "appeal amendment," which stated, "[p]er your instructions I am withdrawing anything that was or seems to be frivolous or that would impede the collection of any tax. . . . My appeal is amended to address these legal issues ONLY and . . . I have not nor would intend on making any arguments that are not base[d] on the law." DX 7, at 1; *see* Tr.

---

6. Ms. Durrant was the only witness called by the government to testify. Her testimony was received over Mr. Schlabach's objection that it was improper under Fed.R.Evid. 602 because Ms. Durrant had no personal knowledge of the Ogden office's handling of Mr. Schlabach's returns and correspondence. Tr. 183:3–18. The court ruled at trial that the testimony could be received based upon Fed.R.Evid. 406, on the ground that it would concern the "routine practice" of the Ogden office. Tr. 187:11–13, 202:17 to 204:10.

At the time of trial, Fed.R.Evid. 406 provided: Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

(Fed.R.Evid. 406 was amended effective December 1, 2011, in a manner that does not affect this analysis.) As the court explained in *United States ex. rel El–Amin v. George Washington Univ.*, 533 F.Supp.2d 12, 26 (D.D.C.2008), "[h]abit applies to individuals; routine practice applies to organizations. The rule authorizes the admission of evidence of a person's habit or an organization's routine practice to prove that the conduct of the individual or organization on a particular occasion was in conformity with that habit or routine practice." Testimonial evidence of routine practice does not, however, constitute direct evidence of events, and such evidence of a practice may, as in this case, be overridden by documentary or other evidence that gives rise to a contrary inference. *See In re Hall*, 781 F.2d 897, 899 (Fed.Cir. 1986) (Absent "rebuttal evidence," "competent evidence of the general library practice may be relied upon to establish an approximate time when a thesis became available."); *Wetherill v. University of Chicago*, 570 F.Supp. 1124, 1129 (N.D.Ill.1983) ("Unless marred by internal contradictions, [the] University's showing would support a finding of 'routine practice.' "); *see also El–Amin*, 533 F.Supp.2d at 25–28 (*qui tam* relator under False Claims Act failed to establish habitual or routine character of conduct of hospital's anesthesiologists).

67:15–20. Mr. Schlabach's amendment then went on to challenge the first penalty solely on the basis that it had not been approved in writing by an IRS supervisor as required by I.R.C. § 6751(b)(1). DX 7, at 1.[7] The amendment also included a lengthy post-script expressing Mr. Schlabach's frustration and confusion. *See id.* at 3 ("I do not understand what [the IRS is] doing or what is going on any longer!"); *id.* ("I want to have this hearing to get everything out of the way, understand what is going on, and hopefully be able to repair the relationship between the IRS and myself without having to pay this penalty [which] I have no idea why I received it."). On August 20, 2009, Fresno replied by denying Mr. Schlabach's hearing request on the grounds that he "did not respond with a legitimate reason or withdraw the frivolous reason or reason reflecting a desire to delay or impede federal tax administration." PX 19, at 1; *see* Tr. 68:16–18.

Less than a month later, on September 7, 2009, the IRS sent Mr. Schlabach a second warning that it would levy on his assets if he did not pay his penalty. Tr. 69:15–18; PX 20. Mr. Schlabach acquiesced, paying the penalty plus interest, totaling $5,176.96, on September 14, 2009. Tr. 72:7–15; PX 21. Mr. Schlabach later filed a refund request. *See* Tr. 88:3–5; PX 27.

Shortly after Mr. Schlabach's payment of the initial penalty, the Ogden office assessed a second penalty, this time based on Mr. Schlabach's CDP hearing request. The Ogden office had received the CDP hearing request from Fresno in early May 2009, Tr. 206:24 to 207:10, 423:13 to 424:9; DX 14, at 2 row 15, and then approved a frivolous-sub-

mission penalty for it on or about October 5, 2009, Tr. 207:16–19, 425:14–17; DX 13; DX 14, at 2 rows 13–14. On October 26, 2009, the IRS sent Mr. Schlabach notice of this second penalty. Tr. 73:6–7; PX 22.

At this juncture, Mr. Schlabach was confused by the second penalty as it was nearly identical to the first and issued shortly after he had paid that penalty. Tr. 74:3–13, 75:2–3. On November 1, 2009, he sent a letter to the Fresno office expressing this confusion and requesting a correction. Tr. 75:2–5; PX 23.[8] The IRS sent a series of letters to Mr. Schlabach in the ensuing months, each of which stated that the IRS needed additional time to research Mr. Schlabach's inquiry. Tr. 83:1–4; PX 25; PX 30; PX 33; PX 34; *see also* PX 37. Ms. Durrant identified the IRS' correspondence as "stall letters." Tr. 516:9–13. Concurrently, the IRS sent repeated requests to Mr. Schlabach urging him to pay the second penalty. Tr. 79:20–21, 89:25 to 90:1; PX 24; PX 28. On January 14, 2010, Mr. Schlabach paid the second penalty. Tr. 90:25; PX 29.[9] Nine months later, after having filed a fruitless refund request, *see* Tr. 95:8; PX 31, on October 6, 2010, Mr. Schlabach filed the present action.

## STANDARDS FOR DECISION

 This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), over claims for federal tax refunds. *See Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir.2002); *Dominion Res., Inc. v. United States*, 97 Fed.Cl. 239, 246 (2011); *cf.* 28 U.S.C. § 1346(a)(1) (providing the district court shall have jurisdiction concurrent with the Court of Federal Claims to consider tax-

---

7. I.R.C. § 6751(b)(1) states that "[n]o penalty ... shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

8. Relying on the IRS' master database file for Mr. Schlabach, Ms. Durrant testified that this letter was forwarded to the Ogden office where it was classified as frivolous and destroyed. *See* Tr. 437:8 to 438:10, 513:24 to 514:4; *cf.* DX 14, at 3 row 3. The court does not credit that testimony. Mr. Schlabach's letter admitted into evidence as PX 23 and the purportedly corresponding entry in the IRS' file for Mr. Schlabach share the same

month but are a year apart. *See* Tr. 524:4–15. Ms. Durrant simply misread the file entry.

9. Mr. Schlabach's payment of the second penalty was in the amount of $3,611.04, PX 29, which included interest of $27.59, PX 28, because the IRS had applied to the second penalty of $5,000, the amount of the refund Mr. Schlabach was due on his tax return for 2007. *See* PX 26 (applying an overpayment of $1,314.00, and interest on the overpayment of $102.82). Interest of $0.27 accrued on the second penalty between the application of the refund and payment. The total paid by Mr. Schlabach on the second penalty was $5,027.86.

refund suits). Tax-refund suits are entertained de novo, not as "a quasi appellate review of an administrative determination." *International Paper Co. v. United States*, 36 Fed.Cl. 313, 322 (1996) (quoting *Hearst Corp. v. United States*, 28 Fed.Cl. 202, 230 (1993)); *see Cencast Servs., L.P. v. United States*, 94 Fed.Cl. 425, 453 (2010). In a typical tax-refund suit, "the IRS assessment is presumed to be correct[ ] and the taxpayer bears the burden of coming forward with evidence to overcome this presumption." *Cencast*, 94 Fed.Cl. at 453. In this instance, however, the burden of production of evidence and of proof is different. "In any proceeding involving the issue of whether or not any person is liable for a penalty under [S]ection . . . 6702, the burden of proof with respect to such issue [is] on the Secretary." I.R.C. § 6703(a). Thus, the court must determine whether the government produced sufficient evidence at trial to justify each of the penalties assessed against Mr. Schlabach.

## ANALYSIS

The IRS assessed penalties against Mr. Schlabach for allegedly violating I.R.C. § 6702, which prohibits the filing of frivolous tax returns and "specified frivolous submissions." I.R.C. § 6702(b). For a tax return to be frivolous, it must be facially incorrect or its correctness must be unascertainable, and it must be "based on a position which the Secretary has identified as frivolous under [I.R.C. § 6702(c) ]" or "reflect[ ] a desire to delay or impede the administration of [f]ederal tax laws." *Id.* § 6702(a)(2)(A)–(B). Correlatively, a specified submission, including "a request for a hearing under . . . [I.R.C. § ] 6330," *id.* § 6702(b)(2)(B)(i), is frivolous if it, like a frivolous tax return, is based on a position listed under I.R.C. § 6702(c) or seeks to delay or impede federal tax administration. *Id.* § 6702(b)(2)(A). Pursuant to I.R.C. § 6702(c), the IRS has issued three successive lists of frivolous positions. *See* Notice 2010–33, 2010–17 I.R.B. 609, 2010 WL 1347082 (Apr. 7, 2010), *superseding* Notice 2008–14, 2008–4 I.R.B. 310, 2008 WL 116049 (Jan. 14, 2008), *superseding* Notice 2007–30, 2007–1 C.B. 883, 2007 WL 777149 (Mar. 16, 2007).

### A. The Tax–Return Penalty

Mr. Schlabach's original Form 1040EZ reports zero income for the year 2007, yet claims a tax refund of $1,313.54. PX 1, at 1. It thus "contains information that on its face indicates that the self-assessment is substantially incorrect." I.R.C. § 6702(a)(1)(B). Second, the tax return includes Forms 4852 which state that "I did not receive an[ ] income as an employee as specifically defined at IRC section 3401 and 3121 and others." PX 1, at 2; *see also id.* at 3. This practice has been identified by the IRS as frivolous under I.R.C. § 6702(c). *See* Notice 2008–14, 2008 WL 116049, at ¶ (7) (referencing Rev. Rul. 2006–18, 2006–1 C.B. 743, 2006 WL 649906 (Mar. 16, 2006) (describing as frivolous the filing of a Form 4852 accompanying a claim that the filer is not an employee under I.R.C. §§ 3401 or 3121)). Similar tax returns and arguments have been held frivolous by this court. *See Waltner v. United States*, 98 Fed.Cl. 737, 740, 767 (2011) (holding to be frivolous a return that reported zero taxable income and that included a Form 4852 which cited I.R.C. §§ 3121 and 3401). Other courts have done the same. *See, e.g., Barrett v. United States*, 369 Fed. Appx. 65, 66–67 (11th Cir.2010) (per curiam); *Montero v. Commissioner*, 354 Fed.Appx. 173, 174, 176 (5th Cir.2009) (per curiam).

■ Mr. Schlabach filed a corrected, proper return approximately five months after receiving notice of his Section 6702 violation, *compare* PX 2, *with* PX 6, but that was too late to absolve him of the penalty. *See* PX 2 (affording a 30–day grace period to withdraw a submission after having been given notice that it was frivolous); *cf.* I.R.C. § 6702(d) (allowing the IRS to reduce the penalty if "such reduction would promote compliance with and administration of the [f]ederal tax laws."). Thus, the court holds that the IRS was justified in assessing Mr. Schlabach a penalty under I.R.C. § 6702(a) for his submission of a frivolous Form 1040EZ for tax year 2007.

### B. The "Specified Frivolous Submission" Penalty

#### 1. The CDP hearing request.

■ The second penalty was assessed because Mr. Schlabach's CDP hearing request

was allegedly a "specified frivolous submission." I.R.C. § 6702(b). The government's burden of proving that Mr. Schlabach is liable for this second penalty is made more difficult by the many procedural irregularities associated with this imposition. Most importantly, the IRS' Ogden office erroneously classified Mr. Schlabach's corrected return submitted in early December 2008 as frivolous correspondence and destroyed it. *See supra*, at 679–81. Had the Ogden office preserved and examined Mr. Schlabach's amended return, as it should have, the frivolousness determination may have had a different result. *Cf. Jenkins v. United States,* 101 Fed.Cl. 122, 130 (2011) (loss of a plaintiff's IRS administrative file "require[d the government] to show that a *prima facie* case for the assessment of [a] penalty existed").[10] Second, and crucially, the Ogden office never received Mr. Schlabach's subsequent "appeal amendment" dated July 16, 2009, which purported to withdraw "anything that was or seems to be frivolous or that would impede the collection of any tax." DX 7, at 1; *see* DX 14, at 2–3 (no documents from Mr. Schlabach received by the Ogden office between May 4, 2009 and January 1, 2010); *cf.* Tr. 23:24–25 (government's counsel's noting that "the amendment was received" but not specifying by whom or when). This amendment should have been considered by the IRS' office in Ogden prior to its frivolousness determination. Third, the IRS' various offices failed to coordinate their activity and correspondence with Mr. Schlabach regarding his returns and the CDP hearing request. *See* Tr. 240:14–21, 428:14 to 430:5, 496:16 to 497:16, 510:14–23. Notably, the IRS' offices apart from Ogden could not readily determine why Mr. Schlabach was assessed the second $5,000 penalty shortly after paying the initial $5,000 penalty. *See* PX 25 (Dec. 11, 2009) (IRS letter from Kansas City, Missouri, stating that the IRS needed more time to research why Mr. Schlabach was assessed a second penalty); PX 30 (Jan. 26, 2010) (same); PX 33 (Mar. 18, 2010) (correspondence from the IRS' Fresno office stating the same); PX 34 (May 4, 2010) (same); *see also* PX 37 (Dec. 23, 2009) (notes of an IRS employee's commentary that the penalty "[d]oesn't look right"). In sum, the IRS could not have given measured consideration to the frivolousness *vel non* of Mr. Schlabach's CDP hearing request.

■ The government's witness, Ms. Durrant, testified about her impressions why Mr. Schlabach's CDP hearing request had been determined by the Ogden office's reviewer to be frivolous.[11] She noted that Mr. Schlabach had used the phrase "Title 26," and that phrase "is used quite frequently by our frivolous filers." Tr. 452:21–23. She also commented that the statement in the hearing request that "there is no basis for the civil penalty," Tr. 453:13–14 (quoting DX 5, at 7), "[t]o me … challeng[es] … the assessment or the authority of the assessment," Tr. 453:19–20. These statements, however, are not specific and fail to distinguish Mr. Schlabach's hearing request from non-frivolous requests. Ms. Durrant also cited the fact that Mr. Schlabach's hearing request "challeng[es] who should sign." Tr. 452:22–23 (referring to the hearing request's citations of I.R.C. § 6751). I.R.C. § 6751 does, however, include a requirement that no penalty under the Code "shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher court official as the Secretary may designate." I.R.C. § 6751(b)(1). The notice of penalty imposition provided to Mr. Schlabach had not included information about this approval, *see* PX 22, nor had Mr. Schlabach previously had

---

10. This is not to say that the IRS cannot assess a penalty for a frivolous submission that follows a non-frivolous return. The statute does not expressly prohibit such a penalty. *See* I.R.C. § 6702(b)(2)(B), (e). Even so, the court notes that it has been unable to find any case relating an instance of the IRS assessing a "specified frivolous submission" penalty for a filing made after the submission of a non-frivolous return.

11. The court allowed Ms. Durrant to testify about her impressions over Mr. Schlabach's objections, even though her testimony "[wa]s almost lay opinion testimony," Tr. 452:2, and she had not been proffered as a lay-opinion witness. Tr. 451:15 to 452:5.

an opportunity to address the approval.[12] While many signature-based challenges have been identified as frivolous, *see* Notice 2008–14, 2008 WL 116049, at ¶¶ (27), (29), (34), none specifically takes the form of words used by Mr. Schlabach. Absent such identification, Ms. Durrant's general invocation of signature-based challenges is not enough. Where the IRS' determination is not based upon a published frivolous position but rather on a deemed purpose to delay or impede the operation of federal tax law, the IRS must explain the basis for its determination. *See Thornberry v. Commissioner*, 136 T.C. 356, 369, 372 (2011) (observing that "a taxpayer who is notified that an unspecified portion of the request, while not based on a published frivolous position, reflects a desire to delay or impede the administration of [f]ederal tax laws[,] may not be able to identify and withdraw that portion without further explanation," and opining that "[I.R.C. § ] 6330(g) requires the Appeals Office to determine the specific portions of petitioners' request for a hearing that are regarded as frivolous or reflect a desire to delay or impede the administration of [f]ederal tax laws, leaving only for hearing the legitimate and bona fide issues petitioners raised"). Finally, Ms. Durrant indicated that other statements by Mr. Schlabach in the CPD hearing request "lean[ ] toward frivolous." Tr. 454:9–13. These tepid pronouncements do not suffice to persuade the court that Mr. Schlabach's CDP hearing request was frivolous. Consequently, the second penalty cannot stand.

### 2. The "appeal amendment."

█ Even if Mr. Schlabach's initial CDP hearing request were to be considered frivolous, contrary to the determination made above, that would not justify the second penalty. Specifically, Mr. Schlabach's appeal amendment, filed pursuant to I.R.C. § 6702(b)(3), withdrew any potentially frivolous portions of his initial CDP hearing request. Mr. Schlabach's appeal amendment explicitly stated:

> Per your instructions I am withdrawing anything that was or seems to be frivolous or that would impede the collection of any tax and ... I am not attempting to impede the administration of federal tax laws in any way. My appeal is amended to address these legal issues ONLY and ... I have not nor would intend on making any arguments that are not base[d] on the law.

DX 7, at 1. Further, contrary to a contention by the government, the appeal amendment does not resurrect the portions of the original CDP hearing request addressed by Ms. Durrant in her testimony. No mention is made of "Title 26," or of a "record of assessment," *compare* Tr. 452:7–22, 454:11–13, *and* DX 5, at 4–6, *with* Notice 2008–14, 2008 WL 116049, at ¶¶ (27), (33), (34), or of a signature requirement on the notice of deficiency, *compare* Tr. 452:22–23, *and* DX 5, at 6, *with* Notice 2008–14, 2008 WL 116049, at ¶¶ (27), (29), (34).[13]

Instead, the appeal amendment argues only that "a taxpayer may challenge the assessment of the [S]ection 6702 penalty on the ground that the assessments were not personally approved in writing in accordance with [S]ection 6751(b)." DX 7, at 1. The IRS has not listed this argument as a frivolous position, nor, considering Mr. Schlabach's genuine confusion expressed in his postscript to the appeals amendment, does it "reflect[ ] a desire to delay or impede the administration of federal tax laws." *See Thornberry*, 136 T.C. at 370; *Callahan v. Commissioner*, 130 T.C. 44, 53 (2008).[14] Mr.

---

12. "[B]ecause the statutory deficiency procedures do not apply to frivolous return penalties [under] 26 U.S.C. § 6703(b), ... [p]laintiff had no prior opportunity to dispute the penalties." *Yuen v. United States*, 290 F.Supp.2d 1220, 1224 (D.Nev.2003).

13. The government argues that Mr. Schlabach "renewed his defense of the zero-income and statutory-employee positions asserted on his original return" because the appeal amendment asserts that "I have not filed anything that is frivo-

lous." Def.'s Post–Trial Br. at 14 (quoting DX 7, at 2) (emphasis omitted). However, a flat denial of liability is not among the positions listed as frivolous by the IRS. Nor, in any event, should Mr. Schlabach's purported withdrawal be construed to be anything other than what it was.

14. Other taxpayers have contended under I.R.C. § 6751 that the IRS must produce the form signed to approve an I.R.C. § 6702 penalty or else the penalty cannot be assessed. Such requests have been described as "meritless," *Lind-*

Schlabach's appeal amendment manifestly was not considered by the IRS' Ogden office before it imposed the second penalty, and, thus, this independent ground also supports negation of the second penalty.

## CONCLUSION

For the reasons stated, the court finds that Mr. Schlabach may not recover the money paid in satisfaction of the initial frivolous-tax-return penalty assessed against him. However, the court also finds that the IRS has not met its burden of proof to support the second penalty for a "frivolous specified submission" in the form of Mr. Schlabach's CDP hearing request. Consequently, Mr. Schlabach is entitled to a refund of the second penalty, amounting to $5,027.86, plus interest at the rate provided by law. The clerk shall enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

*berg v. Commissioner*, T.C.M. (RIA) 2010–067, 2010 WL 1330343, at *10 (Apr. 6, 2010), as having "no legal support," *Borchardt v. Commissioner*, 338 F.Supp.2d 1040, 1044 (D.Minn.2004), and as having "no legal foundation," *Cole v. United States*, No. 1:02–CV–137, 2002 WL 31495841, at *6 (W.D.Mich. Oct. 21, 2002). These decisions, however, tenuously posit that a penalty imposition under Section 6702 does not require a supervisor's signature in the first instance. The IRS takes a position contrary to those decisions, *see* Office of Chief Counsel, IRS, Notice CC–2011–004, *Written Management Approval Required to Assess the Section 6702 Penalty for Frivolous Tax Submissions* (Nov. 1, 2010), *available at* www.irs.gov/pub/irs–ccdm/cc–2011–004.pdf, and the court concurs in the IRS Chief Counsel's view rather than that expressed in *Lindberg, Borchardt,* and *Cole.* Those cases also presume the absence of procedural irregularity, *see Lindberg,* 2010 WL 1330343, at *10; *Cole,* 2002 WL 31495841, at *6 (quoting *Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992)), a presumption that has been rebutted in this case as a general matter, *e.g.,* Tr. 63:1–3; PX 12, and especially in regard to the signing requirement of Section 6751, *see* Tr. 191:3–196:20.